Mr. Murray Mr. Petter May I proceed, Your Honor? Your Honor, what is ultimately at stake in this case is whether a corrupt group of local officials can get away with bullying a local businessman in order to put him out of business and run him out of town.         Mr. Petter gruppe Peter Good morning, Your Honor. May it please the Court? I'm Joe Bluier. I'm here representing the Bridgeport defendants that are referred to in the District Court. Mayor Schaaf, Chief Murray, Bridgeport and Lawrence County. I would like to go right to the mayor, and whipper-commissioner Where the government officials in a city engage in a systemic effort to deprive one of its citizens of the right to peacefully operate a law-abiding business in that city, why shouldn't that type of arbitrary action raise concerns of due process? Your Honor, I believe that the due process is the argument of equal protection in the due process. I realize this is a summary judgment, so you must take everything in light and most favorable to the plaintiff. Even taking that in light, I don't believe that the mayor or anybody was trying to necessarily run this man out of town or do his business harm. We have evidence to that effect. Well, there's evidence Do we have to accept it at this point? I'm sorry? We have evidence directly with respect to the mayor's expressed intent and with respect to several specific steps taken to try to accomplish that result. Well, if we have to accept that on summary judgment? You'd have to look that in light, but I don't think, take those facts to the thing. Of course, it was rebutted by the mayor whether or not he said those things. I don't care if the mayor rebutted it. I agree. Assuming those facts are true, those issues that the mayor said I'm going to run him out of town or I don't like, I don't believe those raise to a due process. They may be a state claim for tortious interference that the trial court did. How about just denial of equal protection of the laws? As in, you did not address plaintiff's reliance upon the Gynoski case out of Chicago on equal protection. Correct. Could you address that? I think equal protection, as I understand it from the way it was addressed in the trial court and in our motion for summary judgment, it's this equal protection class of one. Yes. And one, there's two prongs. There was no other similar situation with the plaintiff in this particular case such that the class of one. One can usually assume in this kind of situation, as in Gynoski, that nobody else was subjected to this kind of sustained harassment. What you have here is a total refusal to consider the license renewal at all. You know, Brunson's able to open only after he appeals to the Illinois Liquor Commission. And even then, even then this mayor tried to order Brunson to remain closed. Total refusal to exercise the function of his position. And, you know, a systemic effort. It certainly looks like a systemic effort to utilize the mechanisms of the government to harass this man and drive him out of business. How can it be looked at in any other way? Your Honor, I can look at it in the fact that you're referring to the renewal of the liquor license under the Killinger case. You know, the Seventh Circuit said that we've got, you know, it's absolute immunity for the mayor. And the mayor just did not act on it. I don't believe there's just any refusal. In fact, once the plaintiff, in this particular case, Mr. Brunson, took on the process, went to the Liquor Commission, the license was issued. But as far as whether or not the license was not issued, and you can, the testimony in the record was that the mayor was considering issues and working on it. Did he ever identify what those issues were? Your Honor, I've lived with this case for long, so I can't remember if it's in my conversation with him or in the deposition with him. Don't tell me about your conversations with him. I'm not going to. But he was, and I think it's in the record, it's not really any definite. I mean, I can't point to one thing that, yes, A, B, or C, that he was considering. But I believe in his testimony, he indicated that he was trying to do some other, look at issues that were concerning to him. He just totally refused to consider the license renewal request at all. If he had, in fact, decided to renew or he had decided to deny the license, then maybe his actions would be protected. But that's not what he did. He just said, mm-mm, I'm not, just a refusal to exercise the very function of his position. Your Honor, I. And I certainly can't get past that. Your Honor, I respect this, agree with this just absolute refusal, and I think it's his elected commission. There's no question. He did not act on it. But I don't believe there's anything in the record that shows that he just maliciously has been insinuated or anything of that nature, refusal to act on it. He testified that he was considering issues. They might be weak issues. But according to the law, he has the absolute immunity when it comes dealing when he's the liquor commission. And I understand that you reading the record that he just absolutely refused to act on it or refused to willfully refuse to issue it. I think the record is clear that he was being the liquor commission, that he was considering issues about this license. And being the liquor commission, he has absolute immunity when it comes to the issuance or not issuance or renewal or not renewal of the license. It may be harsh. If he had considered it, that would be the case. But here he just refused to do anything, to consider it or not consider it. It's very odd. Your Honor, I would agree that it's an odd situation. What remedy was available to Mr. Brunson on the eve of the expiration of his license when there had been no decision yet? Well, he could start the process that he did. And I must admit that I'm not up to speed on the process that he must go to the liquor commission to appeal it. But I do know this. What is the appeal? You go to the liquor commission. In most administrative law, you have to wait for a final order, some definitive decision, before you go to the next step. And if there's been no action, this looks like a great way to put somebody out of business for a while. As I understand your question, and when you were explaining to him, I think I understood it, is that on the eve of the license, just before it goes out, he still has a license. So there's nothing for him to review or to take a process to review because he still has a license. No, the reason that there's nothing for him to review is because the mayor hasn't made a decision on his renewal application. And the night before he still has a license, I mean, theoretically, you could issue a license the day it expired, I would assume, under that question. And under your question, that he doesn't have anything to appeal or he's not damaged or harmed until the license expires and it's not renewed. If you feel better, then we'll ask the day after it expires. What remedy does he have? If the mayor has not acted on his application. He has a remedy through the Illinois Liquor Commission to start the process, which he did. To appeal what? The denial of the… It wasn't denied. That's the problem. This is basic administrative law, and it's so basic that the mayor's failure to act winds up looking like a way to completely stymie the plaintiff's rights. Well, first of all, I think the mayor did have some concerns. But to answer your question, the day after, he then has the process because his license was not renewed for whatever reason he thought. And that's what he did. He started the process through the Liquor Commission and Mr. Mendendorf. And also, then, the way the Illinois Liquor Commission works is, while it's on appeal, he is given the right to operate while his appeal process, administrative process, is going on. And that's what he opened back up in that process until the mayor did reissue the license at a later date after the fact. So I think, you know, the due process, you know, from listening to the questions of the court, the court seems to think that maybe the absolute immunity afforded to a Liquor Commission is not – should not or would – is a problem. It has not – we have not applied it to this kind of case where all we're dealing with is a failure to act on an application to renew. You know, in the Reid case and in the Killinger case, we've got disciplinary efforts that feel a lot more like adjudication. A simple failure to act on what is basically a ministerial application, unless there's some issue and none has been identified, doesn't necessarily feel quite the same. But I see the red lights on for you. Do you want me to answer? You can comment. That wasn't really a question, but you can comment. I have one comment, Your Honor, in light of that. I believe that under the reading of the Killinger case, it's absolute. I mean, the court has some concerns about an administerial or – that I believe under the thing that failed to renew the application is an absolute immunity to the mayor who is the only Liquor Commission. Thank you, Your Honor. Thank you. Thank you, Mr. Bleier. Mr. Legner. Good morning, Your Honors. May it please the court, counsel. Brett Legner on behalf of Defendant Appealee Lisa Wade. Your Honors, this Court should affirm the grant of summary judgment to Defendant Wade on Brunson's Fourth Amendment false arrest and Fourteenth Amendment equal protection claims for two reasons. First, Wade was entitled to absolute prosecutorial immunity. And second, in the alternative, Wade was entitled to qualified immunity. And Brunson made no effort in his reply brief to argue that either immunity did not apply to Wade. And I'd clarify that the due process claim is not brought against Defendant Wade. Turning to prosecutorial immunity, prosecutorial immunity is absolute and applies to Wade's activities in her capacity as Lawrence County State's attorney that were core prosecutorial functions. Those activities directly relevant to her ability to conduct a trial and those activities that are intimately associated with the judicial phase of the criminal process. Here, the undisputed evidence was that Wade's only involvement with plaintiffs regarding the August 7th incident was as a prosecutor. She reviewed the investigation file that was completed by the local police, chiefly Murray. She discussed the completed investigation with Murray to determine whether to bring charges. She determined what charges to bring, and she presented the state's evidence at the preliminary probable cause hearing before the state trial judge. Those are all core prosecutorial duties involving the judicial phase of the proceedings and were directly relevant to her ability to conduct a trial. Brunson contends that Wade lost her prosecutorial immunity by participating in the investigation into the incident, but the facts do not support that, as this court directly found. Wade did not partake in Murray's investigation. Murray gave Wade the completed investigation. Wade did not advise Murray as to what evidence he should collect. Wade did not play the role of a detective interviewing witnesses and gathering evidence or looking for clues. The argument that Wade declined to call in the state police to investigate does not mean that Wade investigated the matter. It means she stayed out of the investigation. Ultimately, even if Wade did investigate the matter, she would lose prosecutorial immunity only with regard to that investigative conduct. But that conduct, and specifically the decision not to ask the state police to investigate Markshoff's involvement, is irrelevant to the false arrest claim, in which Mark simply was not involved, and at the very least dramatically cabins the protection claim. And then this leads me into qualified immunity, which I'll turn briefly to. The plaintiff does not cite any cases clearly establishing that Wade's conduct violated federal law. And then into the merits with regard to the false arrest claim, there was probable cause. Wade was presented with conflicting witness statements in the police report, and she chose to believe one. And that doesn't mean there was no probable cause, and that's certainly not a constitutional problem. And with regard to the protection claim, Wade did not treat similarly situated people differently with no rational basis. She did not ask the state police to investigate Markshoff's involvement, or she didn't ask the state police to investigate anybody's involvement. She didn't treat anybody differently in that regard. And, moreover, there was no irrationality to that decision, because the record is clear that once local police start investigating a matter, the state police will not come into the investigation, as Murray was told when he asked the state police about the investigation. If your honors have no questions, I'd ask that this court affirm the grant of summary judgment to defendant Wade. Thank you very much. Thank you, counsel. Anything further, Mr. Petter? Thank you. If I may have a brief rebuttal for Ms. Wade. First, technically a reply, but I don't even have to beg, much less that's not a waiver. Secondly, it is in the framing of the case that carries everything. We have testimony from Officer Dooley, which opposing counsel did mention, that's document 104, number two, exhibit two, in which he talks about specific conversations with Wade before the investigation. And you've probably read that in my brief. But those conversations, when you read them in a rational way, they show that she knew that Murray had a conflict of interest. She knew that Murray wasn't going to report. Not only had a conflict of interest, hypothetically, he wasn't going to put it in his report. She apparently asked him because she told Officer Dooley the reason she didn't call in the state police was because he wouldn't put it in the police report. Now, he also, Murray admitted he didn't tell the state police about the conflict of interest. That isn't why he contacted them. If he told them about the conflict of interest, surely they would have stepped in to help in this case. And if the state police had been brought in, then it would change the whole demeanor. It would have exposed, just as when the ILCC sent a special investigator, they found out who Crookshoff was. If the state police had come in, they would have seen what a nest of a gang of crooks they had running this city and harming Mr. Brunson's business. And that's saying it in generalities, but that's the essence of our argument about why Wade should be involved. Granted, he was only involved in the form of a cover-up. But it made it possible and enabled the bullying that was going on inside the city officials. Thank you, Your Honors. Thank you very much. The case is taken under advisory.